# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

DORDT COLLEGE and
CORNERSTONE UNIVERSITY,

        Plaintiffs,

vs.

KATHLEEN SEBELIUS, in her official
capacity as Secretary, United States
Department of Health and Human
Services, et al.,

        Defendants.

No. C 13-4100-MWB

**ORDER REGARDING PLAINTIFFS'
MOTION FOR A PRELIMINARY
INJUNCTION**

_____

        This case is before me on Plaintiffs Dordt College's (Dordt's) and Cornerstone University's (Cornerstone's) motion for a preliminary injunction, filed on May 6, 2014 (docket no. 44). In their motion, Plaintiffs ask that I enjoin enforcement of "the Mandate"—the provision of the Patient Protection and Affordable Care Act of 2010 (ACA) requiring that group health plans and health insurance issuers provide coverage, without cost sharing, for certain female contraceptives. *See* 42 U.S.C. § 300gg–13(a)(4).[1] Plaintiffs are religiously oriented colleges that must offer their employees

---

[1] Regulations implementing the Mandate provide that certain types of contraceptives—like Plan B and Ella, which Plaintiffs deem religiously objectionable—must be covered:

> The Health Resources and Services Administration has issued guidelines requiring coverage for "[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity."

(Footnote continued . . .

ACA-compliant health insurance, or face severe penalties. Plaintiffs claim that the Mandate violates the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb to 2000bb–4. Defendants[2] resist Plaintiffs' motion (docket no. 45). For the reasons discussed below, Plaintiffs' motion is granted.

---

> *Women's Preventive Services: Required Health Plan Coverage Guidelines*, Health Resources and Services Administration, http://www.hrsa.gov/womensguidelines/ (last visited Dec. 31, 2012). The FDA has approved several contraceptive methods, including Plan B, Ella, and copper intrauterine devices (IUDs). *Birth Control Guide*, FDA Office of Women's Health, www.fda.gov/downloads/ForConsumers/ByAudience/ForWomen/FreePublications/UCM282014.pdf.
>
> The government issued a regulation (contraceptive mandate) that adopted the Health Resources and Service Administration guidelines as final. 77 Fed.Reg. 8725. Group health plans and health insurance issuers are required to provide coverage consistent with the guidelines, without cost sharing, in plan or policy years beginning on or after August 1, 2012. *Id.* at 8725–26.

*Sharpe Holdings, Inc. v. U.S. Dep't of Health & Human Servs.*, No. 2:12 CV 92 DDN, 2013 WL 6858588, at *1 (E.D. Mo. Dec. 30, 2013) (footnote omitted).

[2] I recognize that defendant Kathleen Sebelius has resigned as Secretary of the Department of Health and Human Services. Her successor, however, has not yet been confirmed. When the next Secretary is confirmed, I will substitute the successor as a defendant per Federal Rule of Civil Procedure 25(d), which provides:

> An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights

(Footnote continued . . .

"RFRA . . . provides that the Government cannot impose a law that substantially burdens a person's free exercise of religion unless the Government demonstrates that the law (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Harrell v. Donahue*, 638 F.3d 975, 983 (8th Cir. 2011) (quoting 42 U.S.C. § 2000bb–1(b)(1)–(2)) (internal quotation marks omitted). Plaintiffs argue that the Mandate substantially burdens their free exercise of religion by requiring Plaintiffs to offer insurance that facilitates access to contraceptives that Plaintiffs deem religiously objectionable. Plaintiffs also argue that the Mandate is not the least-restrictive means to advance any compelling governmental interest. Thus, Plaintiffs request that I enjoin enforcement of the Mandate as it applies to their employee health-insurance plans.

In support of their claims, Plaintiffs rely on their verified complaint and 26 employee declarations. I may grant a preliminary injunction based on such evidence. *See Doe v. S. Iron R-1 Sch. Dist.*, 498 F.3d 878, 880 (8th Cir. 2007) (affirming a preliminary injunction based on a verified complaint and additional documents); *Movie Sys., Inc. v. MAD Minneapolis Audio Distributors*, 717 F.2d 427, 432 (8th Cir. 1983) (holding that courts may rely solely on affidavits in granting preliminary injunctions); *see also K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088 (9th Cir. 1972) ("A verified complaint or supporting affidavits may afford the basis for a preliminary injunction[.]" (citations omitted)).

Plaintiffs filed their motion for a preliminary injunction while their underlying suit challenging the Mandate is currently pending before me. In a recent order (docket

---

> must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

no. 43), I informed the parties that I would wait to resolve the Plaintiffs' underlying claims until after the United States Supreme Court decided *Sebelius v. Hobby Lobby Stores, Inc.*, No. 13-354, and *Conestoga Wood Specialties Corp. v. Sebelius*, No. 13-356, because those decisions will likely impact, and may even resolve, part of this case. But, according to Plaintiffs, the Mandate will take effect against Dordt starting on June 1, 2014—before the Supreme Court will likely decide *Hobby Lobby* and *Conestoga Wood*. Thus, Plaintiffs ask that I enjoin enforcement of the Mandate until I rule on the merits of their underlying claims, which I expect to do shortly after the Supreme Court decides *Hobby Lobby* and *Conestoga Wood*. While Plaintiffs' underlying complaint comprises multiple claims, Plaintiffs rely solely on their RFRA claim in requesting a preliminary injunction.

In deciding whether to grant a preliminary injunction, I apply

> the four factors set forth in *Dataphase Systems, Inc. v. CL Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981). The *Dataphase* factors are "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.* at 114.

*Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 893 (8th Cir. 2013). Generally, the moving party need not "prove a greater than fifty per cent likelihood that [it] will prevail on the merits." *Dataphase*, 640 F.2d at 113. Rather, the movant need only show a "fair chance" of prevailing. *Heartland Acad. Cmty. Church v. Waddle*, 335 F.3d 684, 690 (8th Cir. 2003). Ultimately, "the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113 (footnote omitted). Each case

4

> must be examined in the context of the relative injuries to the parties and the public. If the chance of irreparable injury to the movant should relief be denied is outweighed by the likely injury to other parties litigant should the injunction be granted, the moving party faces a heavy burden of demonstrating that he is likely to prevail on the merits. Conversely, where the movant has raised a substantial question and the equities are otherwise strongly in his favor, the showing of success on the merits can be less.

*Id*. Thus, "where the balance of other factors [besides probability of success] tips decidedly toward plaintiff a preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation." *Id*.

I recognize that "where a preliminary injunction of a duly enacted . . . statute is sought, [courts] require a more rigorous threshold showing that the movant is likely to prevail on the merits." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 730 (8th Cir. 2008) (en banc); *see also Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1098 (8th Cir. 2013) (noting that this "more rigorous threshold" applies to injunctions of federal statutes). "[A] party seeking a preliminary injunction of the implementation of a . . . statute must demonstrate more than just a 'fair chance' that it will succeed on the merits." *Planned Parenthood*, 530 F.3d at 731-32. "We characterize this more rigorous standard . . . as requiring a showing that the movant 'is likely to prevail on the merits.'" *Id*. at 732 (citations omitted). This heightened standard for enjoining a statute "reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." *Id*. (citation and internal quotation marks omitted).

But this case is somewhat unique in that *both* parties claim fidelity to democratically enacted statutes. Plaintiffs seek to enforce RFRA whereas Defendants seek to enforce ACA. Whether I grant or deny injunctive relief, I risk wrongly

5

effectuating one statute at the expense of the other. Presumably, I must be equally deferential to both statutes. Because both parties ask that I enforce a duly enacted statute, *Planned Parenthood*'s "more rigorous threshold" applies with less force to this case. But, as I note below, even if it applies with full force, the Eighth Circuit Court of Appeals has already twice concluded that plaintiffs similarly situated to Dordt and Cornerstone are likely to succeed on the merits of their cases challenging the Mandate.

Applying the *Dataphase* factors, I find that granting Plaintiffs preliminary injunctive relief is appropriate. First, Plaintiffs may suffer irreparable harm without an injunction in that they would be forced to comply with the Mandate to the detriment of their religious exercise. Even if I were to later grant Plaintiffs relief on their underlying claims, that would not remedy the harm caused by forcing the Plaintiffs to do something they deem religiously objectionable. Second, the balance of the equities favors granting a preliminary injunction. The only harm Defendants may suffer if I grant a preliminary injunction is that the Mandate may apply to Plaintiffs a few months later than expected. Third, Plaintiffs have shown that they are sufficiently likely to succeed on the merits. I base this finding on the fact that the Eighth Circuit Court of Appeals has twice granted injunctions pending appeal to similarly situated plaintiffs challenging the Mandate under RFRA.[3] *See* Order, *O'Brien v. U.S. Dep't of Health &*

---

[3] Defendants argue that these prior injunctions are inapposite because they involved differently situated, for-profit companies, rather than institutions like Dordt and Cornerstone that are eligible for religious accommodations related to the Mandate. Defendants' argument seems to be that, because accommodations are available to Dordt and Cornerstone, the Mandate does not apply to them with the same force as it would to for-profit companies and, therefore, the reasons supporting injunctions to for-profit companies do not apply here. But, in *Annex Medical, Inc. v. Sebelius*, No. 13-1118, 2013 WL 1276025, at *1, 3 (8th Cir. Feb. 1, 2013), the Eighth Circuit Court of Appeals granted an injunction in favor of a plaintiff corporation to which the Mandate

(Footnote continued . . .

*Human Servs.*, No. 12–3357 (8th Cir. Nov. 28, 2012) (granting similar plaintiffs an injunction pending appeal); *Annex Med., Inc. v. Sebelius*, No. 13-1118, 2013 WL 1276025, at *3 (8th Cir. Feb. 1, 2013) (noting that "the *O'Brien* panel necessarily concluded that the [similar plaintiffs] satisfied the prerequisites for an injunction pending appeal, including a sufficient likelihood of success on the merits and irreparable harm"); *see also Sharpe Holdings, Inc. v. U.S. Dep't of Health & Human Servs.*, No. 2:12-CV-92-DDN, 2012 WL 6738489, at *6 (E.D. Mo. Dec. 31, 2012) (finding that similar plaintiffs demonstrated a reasonable likelihood of success). And "there is a significant interest in uniform treatment of comparable requests for interim relief within this circuit." *Annex Med.*, 2013 WL 1276025, at *3. Finally, there is no evidence here that the public interest strongly favors either side. Weighed together, these factors support Plaintiffs' request for a preliminary injunction.

The only remaining issue is bond. "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "The amount of the bond rests within the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of that discretion." *Stockslager v.*

---

does not even apply. The plaintiff in *Annex Medical* had fewer than 50 employees and, thus, was not required to provide ACA-compliant insurance to employees. *Id.* at *1 (citing 26 U.S.C. § 4980H(c)(2)(A)). The plaintiff's owner, however, claimed that it was his religious duty to provide insurance even though ACA did not require it. *Id.* On these facts, the Eighth Circuit Court of Appeals enjoined enforcement of the Mandate against the plaintiff. *Id.* at *3. The Mandate applied to the plaintiff in *Annex Medical* with even less force than it applies to Dordt or Cornerstone, yet the plaintiff in *Annex Medical* still received injunctive relief. Rather than being inapposite, this weighs in favor of granting injunctive relief here.

*Carroll Elec. Co-op. Corp.*, 528 F.2d 949, 951 (8th Cir. 1976) (citation omitted). There is no risk of monetary loss to Defendants here; the only arguable harm is that the Mandate might apply to the Plaintiffs a few months later than expected. Thus, Plaintiffs need not submit security in this case. *See Sharpe Holdings*, 2012 WL 6738489, at *7 (temporarily restraining enforcement of the Mandate without requiring the plaintiffs to submit bond).

**THEREFORE, I ORDER THE FOLLOWING:**

(1) The Plaintiffs' motion for a preliminary injunction (docket no. 44) is granted.

(2) Defendants are enjoined, pending resolution of Plaintiffs' underlying claims, from enforcing the Mandate of 42 U.S.C. § 300gg–13(a)(4) and its implementing regulations against Dordt, Cornerstone, and any insurance provider (including insurance issuers and third-party administrators) offering health insurance to Dordt or Cornerstone. This injunction shall apply only with regard to health insurance offered to Dordt and Cornerstone employees. Plaintiffs need not submit bond.

**IT IS SO ORDERED**.

**DATED** this 21st day of May, 2014.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA