# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2726
_____

Dordt College; Cornerstone University

*Plaintiffs - Appellees*

v.

Sylvia M. Burwell, in her official capacity as Secretary of the United States Department of Health and Human Services; Thomas Perez, in his official capacity as Secretary of the United States Department of Labor; Jack Lew, in his official capacity as Secretary of the United States Department of the Treasury; United States Department of Health and Human Services; United States Department of Labor; United States Department of the Treasury

*Defendants - Appellants*

-------------------------------

Americans United For Separation of Church and State; American Civil Liberties Union; American Civil Liberties Union of Iowa

*Amici on Behalf of Appellant(s)*

Association of American Physicians & Surgeons; American Association of Pro-Life Obstetricians & Gynecologists; Christian Medical Association; Catholic Medical Association; The National Catholic Bioethics Center; Alabama Physicians for Life; National Association of Pro Life Nurses; National Association of Catholic Nurses

*Amici on Behalf of Appellee(s)*

_____

Appeal from United States District Court
for the Northern District of Iowa - Sioux City

_____

Submitted: December 10, 2014
Filed: September 17, 2015

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

The Departments of Health and Human Services (HHS), Labor (DOL), and Treasury, as well as their respective Secretaries, (collectively, the government) appeal from the district court's[1] order granting a motion for a preliminary injunction that enjoins the government from enforcing certain provisions of the Patient Protection and Affordable Care Act (ACA), 42 U.S.C. § 300gg-13(a)(4), and its implementing regulations against Dordt College and Cornerstone University, each of which is a nonprofit religious educational institution that offers healthcare coverage to its employees—Dordt through a self-insured plan and Cornerstone through an insured plan.[2] The district court's order also enjoined the government from enforcing the

---

[1]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

[2]A self-insured employer bears the financial risk of paying its employees' health-insurance claims and often hires a third-party administrator to manage administrative functions like processing insurance claims. An insured employer, by contrast, contracts with a separate insurance company to provide healthcare coverage, bear the financial risk of insurance claims, and manage related administrative functions. See, e.g., 1A Steven Plitt, et al., Couch on Insurance § 10:1 n.1 (3d ed. 2013).
-2-

challenged provisions against "any insurance provider (including insurance issuers and third-party administrators) offering health insurance to Dordt or Cornerstone." D. Ct. Order of May 21, 2014, at 8. Dordt and Cornerstone raised objections to the ACA and its implementing regulations that are substantially similar to those addressed by this court in the opinion issued today in Sharpe Holdings, Inc. v. U.S. Department of Health and Human Services, No. 14-1507, slip op. (8th Cir. Sept. 17, 2015). For purposes of this opinion, we provide only a brief discussion of the legislative and administrative background of the ACA and its implementing regulations, as well as an abbreviated summary of the arguments raised by the parties. For a more detailed examination, we direct readers to our opinion in Sharpe Holdings.

Dordt and Cornerstone challenged provisions of the ACA and its implementing regulations requiring them either to provide their employees with healthcare coverage for "[a]ll Food and Drug Administration [(FDA)] approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity" (the contraceptive mandate), or to apply for an accommodation excusing them from providing such coverage. 77 Fed. Reg. 8725, 8725 (Feb. 15, 2012); see 29 C.F.R. § 2590.715-2713(a). Although the ACA provides an exemption from the contraceptive mandate for "grandfathered" health plans, *i.e.*, those in existence at the time of the ACA's adoption, 42 U.S.C. § 18011; 29 C.F.R. § 2590.715-1251, and for health plans sponsored by "religious employers," *i.e.*, "churches, their integrated auxiliaries, and conventions or associations of churches," as well as "the exclusively religious activities of any religious order," 45 C.F.R. § 147.131(a) (citing the Internal Revenue Code, 26 U.S.C. § 6033(a)(3)(A)(i), (iii)), it does not provide a similar exemption for nonprofit religious organizations like Dordt and Cornerstone.

Instead, the ACA provides an "accommodation" for nonprofit religious organizations that have religious objections to the contraceptive mandate but do not

-3-

Case 5:13-cv-04100-MWB-CJW   Document 55   Filed 09/17/15   Page 3 of 7
Appellate Case: 14-2726    Page: 3    Date Filed: 09/17/2015 Entry ID: 4317270

qualify for the religious-employer exemption.[3] 78 Fed. Reg. 39,870, 39,871 (July 2, 2013); see also 29 C.F.R. § 2590.715-2713A. The accommodation is intended to protect religious organizations "from having to contract, arrange, pay, or refer for" contraceptive coverage. 78 Fed. Reg. at 39,872. It is available for a religious organization that (1) has religious objections to providing healthcare coverage for some or all contraceptive services, (2) "is organized and operates as a nonprofit entity," (3) "holds itself out as a religious organization," and (4) complies with a self-certification process. 29 C.F.R. § 2590.715-2713A(a). A religious organization may self-certify by completing and submitting directly to its insurance issuer or third-party administrator (TPA) an EBSA Form 700–Certification (Form 700), certifying that it is a religious nonprofit entity that has religious objections to providing coverage for some or all of the contraceptives required by the mandate, 29 C.F.R. § 2590.715-2713A(a)-(b), or by providing notice to HHS stating the organization's name; the basis on which it qualifies for an accommodation; its religious objections to providing coverage for some or all contraceptives, including the specific contraceptives to which it objects; its insurance plan name and type; and its insurance issuer's or TPA's name and contact information (HHS Notice),[4] see 79 Fed. Reg. 51,092, 51,094-95

---

[3]After the Supreme Court's decision in Burwell v. Hobby Lobby, 134 S. Ct. 2751 (2014), the government revised the relevant regulations effective September 14, 2015, to extend this accommodation to certain closely held for-profit entities that have a religious objection to providing coverage for some or all of the FDA-approved contraceptive methods. See 80 Fed. Reg. 41,318 (July 14, 2015).

[4]Self-certification using HHS Notice was included in the regulations after the Supreme Court's order in Wheaton College v. Burwell, 134 S. Ct. 2806 (2014). Wheaton College, a religious organization, challenged the accommodation process, arguing that completing Form 700 and forwarding the Form to its insurance issuer made it complicit in the provision of contraceptive coverage in violation of its religious beliefs. The Supreme Court granted injunctive relief, enjoining the government from enforcing the contraceptive mandate while the college's challenge to the accommodation process was pending, provided that the college inform HHS

-4-

Case 5:13-cv-04100-MWB-CJW   Document 55   Filed 09/17/15   Page 4 of 7
Appellate Case: 14-2726     Page: 4     Date Filed: 09/17/2015 Entry ID: 4317270

(Aug. 27, 2014); 80 Fed. Reg. 41,318, 41,323 (July 14, 2015); 29 C.F.R. § 2590.715-2713A(b)(1)(ii)(B). After HHS receives the Notice, it provides the information to DOL, which sends a separate notification to inform the religious organization's insurance issuer or TPA of the organization's objections to certain coverage. See id.

Once an insurance issuer or TPA receives Form 700 from the religious organization or the separate notification from DOL it must "provide or arrange payments for contraceptive services" for beneficiaries of the organization's group health plan either by providing those payments itself or by arranging for another party to do so. 29 C.F.R. § 2590.715-2713A(b)(2) (TPA); 45 C.F.R. § 147.131(c)(1)(i) (insurance issuer). With respect to TPAs, Form 700 or HHS notice also designates the TPA "plan administrator and claims administrator for contraceptive benefits" for the religious organization. 78 Fed. Reg. at 39,879; see also 29 C.F.R. § 2510.3-16(b) (providing that Form 700 becomes "an instrument under which the plan is operated [and is] treated as a designation of the [TPA] as the plan administrator under section 3(16) of ERISA[, 29 U.S.C. § 1002(33),] for any contraceptive services required to be covered"); 79 Fed. Reg. at 51,095 (providing that DOL's notification to the TPA under HHS Notice also operates to "designate" the TPA "as plan administrator" under ERISA for contraceptive benefits). The insurance issuer or TPA must provide separate notice regarding contraceptive services to participants and beneficiaries enrolled in the religious organization's group health plan. 29 C.F.R. § 2590.715-2713A(b)(2).

---

"in writing that it is a nonprofit organization that holds itself out as religious and has religious objections to providing coverage for contraceptive services." 134 S. Ct. at 2807. The college was not required to self-certify using Form 700. Id. The Court also stated, "Nothing in this order precludes the Government from relying on this notice, to the extent it considers it necessary, to facilitate the provision of full contraceptive coverage under the" ACA to Wheaton College's employees and students. Id.

-5-

Case 5:13-cv-04100-MWB-CJW   Document 55   Filed 09/17/15   Page 5 of 7
Appellate Case: 14-2726   Page: 5   Date Filed: 09/17/2015 Entry ID: 4317270

Dordt and Cornerstone, in accordance with their sincerely held religious beliefs, oppose the use, funding, provision, or support of abortion, and they believe that certain contraceptives required under the contraceptive mandate—Plan B, ella, and copper IUDs—are functionally equivalent to abortion. See Burwell v. Hobby Lobby, 134 S. Ct. 2751, 2762-63 (2104) (noting that these forms of contraceptive "may have the effect of preventing an already fertilized egg from developing any further by inhibiting its attachment to the uterus"). They brought suit against the government, arguing that both the contraceptive mandate and the accommodation process impose a substantial burden on their exercise of religion in violation of the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb-bb4. They contend that the government is coercing them to violate their religious beliefs by threatening to impose severe monetary penalties unless they either directly provide coverage for objectionable contraceptives through their group health plans or indirectly provide, trigger, and facilitate that objectionable coverage through the accommodation process. As stated above, the district court granted their request for a preliminary injunction to enjoin enforcement of the contraceptive mandate and the accommodation regulations against them.

The government raises arguments for reversal of the district court's order that are substantially similar to those asserted by the government in Sharpe Holdings. Specifically, the government argues that the contraceptive mandate and accommodation process do not substantially burden Dordt and Cornerstone's exercise of religion, that it has compelling interests in safeguarding public health and ensuring equal access to health care for women, and that the contraceptive mandate and accommodation process are the least restrictive means to further those compelling interests. For the reasons set forth in Sharpe Holdings, we conclude that by coercing Dordt and Cornerstone to participate in the contraceptive mandate and accommodation process under threat of severe monetary penalty, the government has substantially burdened Dordt and Cornerstone's exercise of religion. Also for the

-6-

Case 5:13-cv-04100-MWB-CJW   Document 55   Filed 09/17/15   Page 6 of 7
Appellate Case: 14-2726   Page: 6   Date Filed: 09/17/2015 Entry ID: 4317270

reasons set forth in Sharpe Holdings, we conclude that, even assuming that the government's interests in safeguarding public health and ensuring equal access to health care for women are compelling, the contraceptive mandate and accommodation process likely are not the least restrictive means of furthering those interests.[5] Thus, based on our reasoning in Sharpe Holdings, we affirm the order granting injunctive relief.

———————————————

[5]Dordt and Cornerstone argue that the government's asserted "compelling interests" are fatally undermined in light of the exemptions to the contraceptive mandate and accommodation process granted to grandfathered healthcare plans and religious employers—exemptions that result in thousands of women without access to contraceptive coverage through their employers' healthcare plans. Because we affirm the district court's grant of injunctive relief on the basis that the government has failed to establish that the contraceptive mandate and accommodation process are the least restrictive means to accomplish their stated compelling interests, we decline to address Dordt and Cornerstone's assertions regarding the insufficiency of the government's compelling interests. See Hobby Lobby, 134 S. Ct. at 2780 ("We will assume that the interest in guaranteeing cost-free access to the four challenged contraceptive methods is compelling within the meaning of RFRA . . . .").

-7-

Case 5:13-cv-04100-MWB-CJW   Document 55   Filed 09/17/15   Page 7 of 7
Appellate Case: 14-2726   Page: 7   Date Filed: 09/17/2015 Entry ID: 4317270